[Cite as *State v. Keenan*, 2026-Ohio-2666.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2026-A-0005 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| ASHLEY GINETTE KEENAN, | |
| Defendant-Appellant. | Trial Court No. 2024 CR 00045 |

## OPINION AND JUDGMENT ENTRY

Decided: July 13, 2026
Judgment: Affirmed

*April R. Grabman*, Ashtabula County Prosecutor, and *Dane R. Hixon*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Edward A. Czopur*, P.O. Box 3313, 407 Boardman Canfield Road, Suite 3313, Youngstown, OH 44503 (For Defendant-Appellant).

MATT LYNCH, P.J.

{¶1} Appellant, Ashley Ginette Keenan, appeals the judgment of the Ashtabula County Court of Common Pleas, ordering the involuntary administration of medication and treatment to restore her competency to stand trial. After a careful review of Keenan's assignment of error challenging the manifest weight of the evidence, and a review of the record and pertinent law, we affirm the trial court's judgment.

{¶2} On January 25, 2024, following the death of her mother, an Ashtabula Grand Jury indicted Keenan on four counts: Counts 1 and 2, Aggravated Murder with a Firearm Specification, an unclassified felony, in violation of R.C. 2903.01(A), 2929.02(A),

and 2941.145(A); Count 3, Felonious Assault with a Firearm Specification, a second-degree felony, in violation of R.C. 2903.11(A) and (D)(1)(a), and 2941.145(A); and Count 4, Murder with a Firearm Specification, an unclassified felony, in violation of R.C. 2903.02(A) and (D), 2929.02(B), and 2941.145(A).

{¶3} On November 14, 2025, a competency hearing was held at which the trial court found Keenan incompetent to stand trial because she was unable to assist in her defense. The court further found there was a substantial probability Keenan could be restored to competency within the timeframe permitted by statute. The court ordered Keenan to undergo treatment at Twin Valley Behavioral Healthcare Hospital ("Twin Valley") in Columbus, Ohio.

{¶4} On December 15, 2025, Twin Valley, via the Acting Chief Clinical Officer Dr. Peter Iversen and Keenen's attending psychiatrist Dr. Ramya G. Goyal, filed a petition for the involuntary administration of medication and medical treatment under R.C. 2945.38(B)(1)(c). The petition noted Keenan has a history of severe psychotic symptoms, such as disorganized thinking and delusions, which significantly interfere with her functioning and present a danger to the rights of others outside of the hospital setting. Further, Keenan lacks the insight to understand the importance of taking medication and complying with routine blood work to monitor the medications, and continued hospitalization will be required for the safety of others if she is not treated with medication. The petition included a full list of potential medications and stated that one or possibly two medications from each class listed will likely result in Keenan's recovery, but the full list was provided in case she does not respond to those initially prescribed. The petition also reviewed the possible side effects from the medications, noting routine monitoring would

be required, and requested the court order include involuntary medical procedures (such as bloodwork, urinalysis, EKG, or X-rays). Lastly, the petition stated there are no alternative treatments likely to be helpful to control Keenan's symptoms, and the proposed medications are the standard and accepted treatment for her form of mental illness presentation.

{¶5} On January 7, 2026, a hearing was held on the petition at which the State presented Dr. Goyal's testimony. She explained Twin Valley's goal in treating Keenan is to restore competency, which includes stabilizing any mental illness. Keenan has a treatment team, which includes among others, Dr. Goyal and a psychologist. Dr. Goyal consulted with the treatment team and two other Twin Valley colleagues; all concurred medication was the best route for Keenen's treatment goals.

{¶6} When Keenan arrived at the facility on December 9, 2025, Dr. Goyal offered Keenan medication (Abilify) to stabilize her mood, anxiety, and possible paranoia and/or delusions. Dr. Goyal reviewed that when she first met Keenan, she had rigid, concrete, and obsessive thinking. Many of the things Keenan told her in their initial meeting seemed "far-fetched." After Dr. Goyal conducted further research into Keenan's background, she was able to confirm that some of the factual matters Keenan reported were correct, while others remained difficult to verify. Keenan continued to exhibit concrete and rigid thinking.

{¶7} Dr. Goyal posited that treatment with medication would help Keenan work more efficiently with her attorney and help Keenan understand her criminal case by making her less rigid and open to understanding the nuances of her very high-profile case and the charges against her. Dr. Goyal explained Keenan's strict diet and exercise regimen did not allow her to consider the potential benefits of psychiatric medication, and

Case No. 2026-A-0005

she was unable to have a meaningful dialogue on the risks and benefits of medication. Because of this, Keenan is unable to give informed consent to treatment.

{¶8}     Dr. Goyal further testified Keenan has shown no improvement, she has not been able to move to group therapy for competency restoration, and she has not been able to engage in the competency restoration process and treatment.  Keenan's refusal to take medication has impeded her treatment.  Dr. Goyal believes Keenan is unable to complete tasks in a timely manner because of her obsessive compulsiveness and anxiety. Keenan has skin conditions and a particular issue with excessive hand washing and hair combing.   Keenan also has difficulty working with nursing staff and the day staff, particularly with shower time.  In addition, Keenan places herself in situations where she does not distance herself appropriately from other violent and upset patients and must remain in the locked ward.

{¶9}     Dr. Goyal reviewed her proposed medical treatment for Keenan, including giving Keenan the normal dosages of medication that are typically prescribed for the conditions Dr. Goyal provisionally diagnosed, which include delusional or psychotic disorder, if not otherwise specified, bipolar disorder, and/or obsessive-compulsive disorder.  Keenan's prior diagnoses include psychotic disorder not otherwise specified and delusional disorder.  Dr. Goyal explained Twin Valley has a lab onsite to help monitor any potential side effects from any medication, which includes blood work, imaging, and consulting.   The medications would be monitored for physical and mental effects, including sedation, diminishment in her ability to express emotion, and any cognitive slowing.  Thus far, Keenan had not been cooperative with lab work, even to get a baseline measure of her overall health.

Case No. 2026-A-0005

{¶10} Dr. Goyal opined there is no other alternative to medication, and without medication it is likely Keenan will be indefinitely hospitalized. Dr. Goyal believes there is a high probability the medications will help at least some of Keenan's symptoms, which include anxiety, sleep issues, persecutory delusions, and paranoia. She further opined the medications and treatments would help Keenan communicate and have discussions with counsel, aid in her own defense, and have a rational understanding of the charges against her and the legal process. In addition, medication would lessen some of Keenan's risky behaviors that have been observed at Twin Valley by helping her with insight and understanding of situations, especially her grandiosity where she feels invincible, which Dr. Goyal believes is a result of her illness. Keenan has been unable to progress to group therapy because she cannot be in the courtyard with the other patients. Keenan is highly intelligent, and she was able to go to college and follow the rules of the classroom. Dr. Goyal feels that medication will help bring Keenan back to that point of functioning.

{¶11} After hearing closing arguments from the parties, the trial court found the treatment recommended by Twin Valley is (1) medically appropriate for the purpose of restoring Keenan to competency; (2) substantially unlikely to have side effects that undermine the fairness of trial, and any side effects will be closely monitored; (3) necessary to advance an important governmental trial related interest, to wit: to bring the case to trial at the earliest opportunity; and (4) there are no less intrusive alternative treatments available.

{¶12} Following the hearing, the trial court issued a judgment entry ordering the involuntary administration of psychotropic medication and treatment. The court memorialized its oral findings made at the hearing and further found: Keenan has refused

Case No. 2026-A-0005

to cooperate with psychotropic medication since she arrived at Twin Valley on December 9, 2025; Keenan continues to be a mentally ill individual subject to court ordered hospitalization; she is in need of prescribed medication as listed in Twin Valley's application; she is mentally unable to receive information that is required to enable her to give a fully informed, intelligent, and knowing consent to either accept or refuse the propose medications; the proposed medications are the least intrusive form of treatment available at this time and are appropriate for Keenan's diagnoses; the benefits of the proposed medications outweigh the potential side effects; and the likelihood of Keenan becoming clinically stable and restored to competency to stand trial is increased by complying with Twin Valley's proposed treatment. The court concluded by ordering Keenan to take all medication prescribed by the Twin Valley medical staff and to comply with all necessary lab work. The court further ordered Twin Valley to forcibly administer all medications and lab work if Keenen continues to refuse.

{¶13} Keenan timely appealed, and on January 13, 2026, the trial court granted Keenan's motion to stay the order pending the instant appeal.

{¶14} Keenan raises one assignment of error for our review:

{¶15} "The trial court's order, allowing forced medication, was against the manifest weight of the evidence."

### Manifest Weight of the Evidence

{¶16} In her sole assignment of error, Keenan challenges the trial court's order authorizing the involuntary administration of medication and treatment, contending the court's decision is against the manifest weight of the evidence. While Keenan acknowledges the trial court found the necessary factors pursuant to *Sell v. United States*,

Case No. 2026-A-0005

539 U.S. 166 (2003), she contends the evidence does not support the trial court's findings, particularly as to the second and third factors. Thus, she contends there was no evidence to support the court's findings that involuntary administration of medication is (1) substantially likely to render her competent to stand trial and (2) necessary to further the State's interest because any alternative, less intrusive treatments are unlikely to achieve substantially the same results.

{¶17} "An appellate court reviews the trial court's finding on the first *Sell* factor de novo and the court's findings on the remaining *Sell* factors for clear error." *State v. Lanier*, 2021-Ohio-4194, ¶ 12 (10th Dist.). In this case, Keenan concedes the trial court made the required *Sell* findings, but argues the evidence in the record does not support the court's findings. Thus, "'we will reverse only if the trial court's findings are against the manifest weight of the evidence, i.e., not "supported by some competent, credible evidence."'" *State v. DeMarcia*, 2023-Ohio-4617, ¶ 17 (1st Dist.), quoting *State v. Jefferson*, 2021-Ohio-2092, ¶ 6 (1st Dist.), quoting *State v. Ramey*, 2019-Ohio-5087, ¶ 11 (10th Dist.).

{¶18} Ohio's guidelines for the involuntary administration of medication to a defendant who is deemed incompetent to stand trial are set forth in R.C. 2945.38(B)(1)(c), which provides:

> If the defendant is found incompetent to stand trial, if the chief clinical officer of the hospital, facility, or agency where the defendant is placed, or the managing officer or director of the institution, facility, or jail, or the person to which the defendant is committed for treatment or continuing evaluation and treatment under division (B)(1)(b) of this section determines that medication is necessary to restore the defendant's competency to stand trial, and if the defendant lacks the capacity to give informed consent or refuses medication, the chief clinical officer of the hospital, facility, or agency where the defendant is placed, or the managing officer or director of the institution, facility, or jail, or the person to which the defendant is committed for

Case No. 2026-A-0005

treatment or continuing evaluation and treatment may petition the court for authorization for the involuntary administration of medication. The court shall hold a hearing on the petition within five days of the filing of the petition if the petition was filed in a municipal court or a county court regarding an incompetent defendant charged with a misdemeanor or within ten days of the filing of the petition if the petition was filed in a court of common pleas regarding an incompetent defendant charged with a felony offense. Following the hearing, the court may authorize the involuntary administration of medication or may dismiss the petition.[1]

{¶19} "While R.C. 2945.38 authorizes the involuntary administration of medication, it 'does not shed light on *whether* a court should order involuntary medication.'" (Emphasis sic.) *DeMarcia* at ¶ 15, quoting *Jefferson* at ¶ 5. Forced administration of psychotropic drugs to restore a defendant's competency to face serious charges must be weighed against unconstitutionally depriving an individual of the liberty to reject medical treatment. *See Sell*, 539 U.S. at 177-178.

{¶20} In *Sell*, the Supreme Court of the United States reviewed its past precedent and determined "the Constitution permits the Government involuntarily to administer [sic] antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." *Id.* at 179, discussing *Washington v. Harper*, 494 U.S. 210, 221-222 (1990), and *Riggins v. Nevada*, 504 U.S. 127 (1992).

---

1. While this appeal was pending, on February 20, 2026, R.C. 2945.38 was amended, in relevant part, to increase the time to restore a defendant to competency to stand trial from one year to three years for the crimes of aggravated murder, murder, and an offense of violence for which a sentence of death or life imprisonment may be imposed. R.C. 2945.38(C)(1)(a)-(c). The amendments to R.C. 2945.38 apply retroactively to all defendants found incompetent to stand trial prior to the effective date of the amendment and whose restoration to competency is ongoing or whose case remains pending. *See* R.C. 2945.38(H).

Case No. 2026-A-0005

{¶21} The *Sell* Court then outlined a four-factor test for trial courts to apply. Before ordering the administration of involuntary medication, a court must find (1) "*important* governmental interests are at stake," such as "bringing to trial an individual accused of a serious crime," while considering the facts of the individual case and whether special circumstances exist that lessen the importance of that interest; (2) "involuntary medication will *significantly further*" the state's interests, i.e., "administration of the drugs is substantially likely to render the defendant competent to stand trial" and is "substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair"; (3) "involuntary medication is *necessary*" to further the state's interests because "any alternative, less intrusive treatments are unlikely to achieve substantially the same results"; and (4) "administration of the drugs is *medically appropriate*, i.e., in the patient's best medical interest in light of his [or her] medical condition." (Emphasis sic.) *Id.* at 180-181.

{¶22} First, Keenan has been accused of serious crimes; namely, two counts of aggravated murder and one count of murder for the death of her mother. Thus, there is no question the State has a paramount interest in bringing this matter to trial. *See id.* at 180 ("The Government's interest in bringing to trial an individual accused of a serious crime is important."); *Lanier*, 2021-Ohio-4194, at ¶ 13 (10th Dist.) (bringing the appellant, who was charged with murder, to trial was an important governmental interest).

{¶23} Regarding the second factor, Dr. Goyal testified there is a high probability Keenan will recover with the proper medication that is typically prescribed for the types of mental conditions she presents. Dr. Goyal reviewed Keenan is highly intelligent and at

one point was able to attend college and follow school rules. Dr. Goyal opined medication may help bring Keenan back to that point by lessening her symptoms, which would allow her to rationally understand the serious charges against her and enable her to assist in her defense. Dr. Goyal also explained Twin Valley is equipped to constantly and consistently monitor any possible side effects from the medications. Thus, there is evidence that administration of the medication will significantly further the State's interest in bringing the matter to trial.

{¶24} Regarding the third factor, Dr. Goyal testified there are no alternative, less-intrusive treatments. Keenan appears caught in a difficult circumstance from which there is no escape due to conflicting or dependent conditions. Keenan wants to try alternative, less-intrusive therapies, but she is restrained in the locked ward until her symptoms improve, thus the need for medication. Dr. Goyal opined Keenan could be indefinitely hospitalized if medication is not administered, and she did not "see the trajectory changing." There is no evidence, as Keenan suggests, that with more time her competency can be restored without medication or with any alternative, less-intrusive treatments. Thus, there is evidence that involuntary administration of medication is necessary.

{¶25} We recognize the validity of Keenan's argument that a lengthier civil confinement can be a special circumstance that lessens the importance of bringing the accused to trial faster, since the "risks that ordinarily attach to freeing without punishment one who has committed a serious crime" are diminished, *Sell*, 539 U.S. at 180 (albeit noting, "The Government has a substantial interest in a timely prosecution. And it may be difficult or impossible to try a defendant who regains competence after years of

Case No. 2026-A-0005

commitment during which memories may fade and evidence may be lost."). In this case, however, even if the involuntary administration of medication and treatment were delayed for an alternative treatment, there is no evidence of any alternative treatments and/or one that would work given more time.

{¶26} Lastly, Dr. Goyal testified the proposed medications are those typically prescribed for the conditions Keenan presents, the medications have a high success rate, the benefits outweigh any risks, and they are medically appropriate. Thus, there is evidence to support the trial court's finding under the fourth *Sell* factor, that the treatment proposed is medically appropriate for Keenan's conditions.

{¶27} Having reviewed the record, we determine there is competent, credible evidence supporting the trial court's findings under *Sell*, particularly as to the second and third factors. Thus, the court's judgment is supported by the manifest weight of the evidence, and Keenan's sole assignment of error is without merit.

{¶28} The judgment of the Ashtabula County Court of Common Pleas is affirmed.

EUGENE A. LUCCI, J.,

ROBERT J. PATTON, J.,

concur.

Case No. 2026-A-0005

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignment of error is without merit. It is the judgment and order of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

PRESIDING JUDGE MATT LYNCH

JUDGE EUGENE A. LUCCI,
concurs

JUDGE ROBERT J. PATTON,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---

Case No. 2026-A-0005